HALL, Judge.
Plaintiff brought this suit against Gar-rard-Milner Chevrolet Inc. (hereinafter referred to as “defendant”) and its liability insurer for damages resulting from the theft of his truck while it was in defendant’s possession for repairs. He itemized his damages as follows:
“Truck repairs $ 500.00
Driver’s salary from November 9 (sic), 1965 to January 14, 1966 1,650.00
Estimated loss of.profit to January 14, 1966 2,750.00
Total $4,900.00”
*229 Trial on the merits resulted in a judgment in plaintiff’s favor for $2,050.00 plus interest and costs. Defendant and its insurer appealed. Plaintiff answered the appeal praying that the judgment be increased to $4,900.00 the amount prayed for in his petition.
Appellants do not contest liability in this Court. They contest the amount of the damage award only.
The Trial Judge did not render written reasons for judgment but, based upon his remarks during the trial, the parties are in agreement that the judgment rendered in plaintiff’s favor for $2,050.00 represents an award of $400.00 for the estimated cost of repairing the damage to the truck caused by the theft and the balance of the award, amounting to $1,650.00, represents the “driver’s salary” and that the Trial Judge rejected plaintiff’s claim for loss of profits.
1.
Plaintiff was the owner of a 1954 International 2 ton truck which required some repairs. He brought the truck to defendant’s repair shop to have the battery changed and a new voltage regulator installed. Because the battery was installed backwards some damage resulted to the electrical system and it wouldn’t run. It was towed back to defendant’s shop for further attention and shortly thereafter defendant notified plaintiff that the truck was ready and that he could come get it. When plaintiff arrived at defendant’s place of business the truck was missing from defendant’s lot. The police were notified and the truck was located three days later some distance away damaged to the extent that it would not run. At plaintiff’s request the truck was towed back to the shop by defendant.
When defendant refused to repair the damage resulting from the theft plaintiff had the truck towed to Automotive Service where it was repaired. The repairs were completed on January 14, 1966. The repair bill amounted to $490.34 which plaintiff paid.
The truck was undoubtedly damaged to some extent while in the possession of the thief. The question presented is whether the damage caused by the theft rendered necessary all of the repairs which were made by Automotive Service.
Plaintiff testified that when he first had the truck towed to defendant’s shop the only thing the matter with it was a dead battery; that otherwise the truck was in good running condition; that when defendant put in a new battery and a new voltage regulator the battery was put in backwards causing the truck to stall; that subsequently all defendant had to do was to reverse the battery and the truck would have been in first class operating condition. He argues from this that all the parts furnished and repairs made by Automotive Service were necessitated by damage resulting from the theft. Plaintiff did not call anyone from Automotive Service to testify and the only proof he offered in addition to his own testimony was Automotive Service’s repair bill.
Defendant adduced the testimony of two of its employees, Girado Perez and Valerie J. Petrie, Jr.
Mr. Perez, a mechanic and electrician, testified that he is the defendant employee who changed the truck’s voltage regulator and that he also changed the generator; that he saw the truck one time only and that he did no further work on it; that “it had bad combustion.”
Mr. Petrie, defendant’s shop foreman and Assistant Service Manager testified that he saw the truck when it was in defendant’s shop for repairs; that he didn’t “remember the truck being in too good shape when I seen it;” that he had not heard the engine run before the theft but after the theft the engine had a terrible knock which “from outside diagnosis and experience” he would say was due either to a broken piston or a broken connecting rod bearing. Mr. Pe-trie then undertook to go over the Automotive Service repair bill to determine what repairs in his opinion were due to the *230 theft. He particularly indicated that in his opinion there was no way for the cam shaft or any part of the valve system to wear out in three days even if the truck had been driven without oil. In his opinion the furnishing and installation of these items as well as other items such as a fan belt, plugs, points, condensers and carburetor kit were not necessiated by the theft.
While it is well settled that a compensated depositary is obligated to return the deposit in the same condition as received, he is not obligated to return it in any better condition. In our opinion the burden here rested upon plaintiff to prove the condition of the truck when defendant received it and to prove that the repairs made after the theft did no more than restore the truck to the same condition. The testimony in the case is very sketchy and we realize that it was very difficult, if not impossible, for the Trial Judge to resolve the exact amount of damage to the truck caused by the theft. Undoubtedly a great deal of damage was caused thereby but we are not satisfied that the truck, outside of needing a new battery and a new voltage regulator and generator, was in the best condition when plaintiff delivered it to defendant, and we are not satisfied that all of the parts furnished and work done by Automotive Service was related to the theft damage. Plaintiff himself testified that “I am not sure. I really am not sure.” For these reasons we find no manifest error in the Trial Judge’s reduction of plaintiff’s claim for the truck repairs from the sum of $490.34 to the sum of $400.00. Defendant does not contest the amount of this award in plaintiff’s favor stating that it is satisfied “an award of $400.00 on this item would be equitable to both parties.”
2.
The next item of plaintiff’s claim is according to his petition for “Driver’s salary from November 9, 1965 to January 14, 1966 — $1,650.00.” According to plaintiff’s attorney the first date is a typographical error; that it should be November 19th, 1965, and the testimony shows that the claim is not for “driver’s salary” but for the rental of a truck with a driver.
The record reveals that plaintiff was a roofing contractor who came to New Orleans from Arkansas in the aftermath of . Hurricane Betsy. Plaintiff claims that after his 2 ton International truck was stolen and during the period it was being repaired he was forced to find a substitute truck for use in his business; that he could not find a comparable truck for hire so he bought one % ton truck and hired another ¡kÍ ton truck with a driver.
Plaintiff testified that he paid $3.75 per hour for the hire of the truck and driver, and claims he used the truck ten hours per day for a total of forty-four working days, making the total cost to him amount to $1,650.00.
Plaintiff was the sole witness who testified relative to this claim. He testified that “a fellow was finding me some labor” and that a man whom he indicated was not in the truck rental business but was “just an individual who happened to own a ¿4 ton truck, trying to make a living” came to him and he hired the man and his truck; that “the man’s name was Phosphal” and that he came “from the Southland.”
Plaintiff admitted that he had no records which would show payment for truck rental and driver’s salary and could not state with any certainty the dates on which the man was hired, his testimony being that he hired him “shortly after I found I was going to get my truck fixed until sometime around the middle of January. I would say six or eight weeks.” This was the extent of the proof offered by plaintiff to substantiate his claim for $1,650.00.
Plaintiff’s testimony relative to this claim is in our opinion unsatisfactory and insufficient to support a judgment therefor.
*231 3.
Plaintiff claims a loss of profit of $2,750.00. He testified that the 24 ton truck which he bought and the 24 ton truck which he stated he rented were together not of sufficient capacity to replace the stolen 2 ton truck; that the latter could hold four times as much as either of the other trucks; that he used the trucks to haul roofing material to, and to haul trash off the jobs; that it took longer for the two 24 ton trucks to do this work than it did the stolen truck and consequently longer to complete a job and take on another; that he estimated he lost $50.00 per day profit on that account. Plaintiff’s testimony is utterly devoid of any explanation of how he arrived at his estimate.
In connection with his claim for loss of profit plaintiff adduced the testimony of Dan Markel, a New Orleans roofing contractor since 1934.
Mr. Markel testified that he was using four to five trucks in his roofing business during the period from October 1965 to January 1966.
When asked how much he earned per truck during that period of time Mr. Markel testified: “I took my gross sales, divided it by the number of trucks; it came to $21,-000.00 a truck; about $200.00 a day per truck.” After stating that was gross profit he said: “My profit was about 32%; a little better than $60.00 a day.” He further stated that the same figures would be generally applicable to roofing companies in New Orleans during that time.
Mr. Markel admitted on cross examination that he figured his profit on the basis of the job and not on a per truck basis. This is the extent of Mr. Markel's testimony.
Plaintiff argues from this that his own loss of profit resulting from being deprived of the use of his 2 ton truck was at least $50.00 per day — this in spite of the fact that according to his own testimony he had two 24 ton trucks working which at least to a great extent made up for the work expected of the stolen truck. Be this as it may, we do not in the first place understand how a profit per truck can be determined by the method employed by Mr. Markel. According to this method if he used only one truck all of his profit would be allocated to the truck and nothing to the roofing work done by him. Furthermore it does not follow that plaintiff’s net profits are in anywise comparable to Mr. Markel’s.
We are of the opinion that plaintiff has utterly failed to prove his claim for loss of profits.
For the foregoing reasons the judgment appealed from is amended by reducing the award in plaintiff’s favor from the sum of $2,050.00 to the sum of $400.00 and by making the judgment solidary against both defendants. As so amended and in all other respects the judgment is affirmed; costs of this appeal to be borne by plaintiff-ap-pellee.
Amended and affirmed.